UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

TARA BRANDO SULLIVAN　　　　　　　　CIVIL ACTION NO. 5:19-cv-0784

VERSUS　　　　　　　　　　　　　　　　JUDGE DONALD E. WALTER

KTBS, LLC　　　　　　　　　　　　　　　MAGISTRATE JUDGE HORNSBY

## **STATEMENT OF UNCONTESTED FACTS**

1. This is a disability discrimination suit filed by Tara Brando Sullivan ("Plaintiff" or "Sullivan") against her former employer, KTBS, LLC.   [Doc. # 1].

2. Plaintiff alleges she was discriminated against because she was regarded as disabled; she also alleges that KTBS failed to engage in the interactive process or obtain independent assessment as to whether reasonable accommodations were available.   [Doc. # 1].

*Background*

3. KTBS operates a television station in Shreveport, Louisiana.   [Sirven Aff. ¶ 2].   KTBS is the local ABC affiliate ("Channel 3") that serves 28 counties and parishes in Northwest Louisiana, East Texas, western Oklahoma and southern Arkansas with a television marketing population over half a million people.   *Id.*

4. Plaintiff was hired by KTBS in January 2017 as a multimedia journalist ("MMJ").   [Pl., at 13, 16; RB at 16; SM at 15].[1]

5. Plaintiff's employment with KTBS ended on May 24, 2017.   [Pl., at 16].

6. A MMJ's primary duty is to take a news story through the entire news media process up to and including presenting the story in a particular news media (on-air newscast or social media/internet).   [Pl., at 17-18; RB at 16-18; Sirven Aff. ¶¶ 6-8].   After selecting a story, they must investigate, conduct interviews, shoot video, write the content, and edit the content and video for the story.   *Id.*   This requires the MMJ to travel throughout the KTBS viewing area and the MMJ often travels and works alone since the technology no longer requires a separate cameraperson (the MMJ simply sets up a small video camera on a tripod).   [Pl., at 34-35].

7. KTBS also cross-trained MMJs, including Plaintiff, to handle some producer duties, and likewise KTBS cross-trains field producers to handle MMJ duties.   [Pl., at 17-18, 22, 39-40; RB at 10-12, 18-20, 68-69; Sirven Aff. ¶¶ 9-10].

---

[1] "Pl." refers to Plaintiff's deposition taken on September 28, 2020; "GS" refers to George Sirven, "RB" refers to Randy Bain, "SM" refers to Sherri McCallie; TB refers to Terri Brando.

*The May 2, 2017 Incident and Plaintiff's Subsequent Limitations*

8. On May 2, 2017, Plaintiff collapsed and lost consciousness while she and KTBS News Operations Manager Trey Lankford were covering the destruction and aftermath of the Canton, TX tornados.  [Pl., at 37, 40].

9. During the following week, Plaintiff and her mother, Terri Brando, periodically provided updates to KTBS news director Randy Bain about her daughter's condition via text messages.  [RB at 29-30; TB at 20-26; Exs. 7 and 8].

10. Based on the information from Terri Brando, as of May 10, Mr. Bain was told that doctors were still trying to diagnose Tara's ailment and that she was restricted from getting up by herself and was limited in her movement and ability to speak.  *Id.*

11. Mr. Bain forwarded this information to KTBS station manager George Sirven and controller Sherri McCallie.  [RB at 32-34; GS at 9-10, 12-13, 15-16; SM at 17-18; Sirven Aff. ¶ 13; Ex. 10].

12. Mr. Sirven reached out to undersigned counsel for legal advice to ensure compliance with the FMLA, ADA, and workers compensation, among other laws.  [GS at 7-9, 13; SM at 12, 18; Sirven Aff. ¶ 14].

*KTBS's Efforts to Accommodate*

13. On May 11, 2017, KTBS sent Plaintiff a letter advising that she was being placed on unpaid medical leave pending further information about her anticipated return-to-work date with or without restrictions.  [Pl., at 57-59; RB at 34-36; GS at 13-15; SM at 19-22; Sirven Aff. ¶¶ 15-16; Ex. 3].

14. Plaintiff was placed on an unpaid leave even though she was not eligible for FMLA leave as she had not yet worked a total of 12 months with KTBS.  [RB at 45].

15. Plaintiff visited with a series of doctors to try to figure out what was going on.  [Pl., at 52-56, 59, 63].  She continued to experience severe headaches, vertigo/dizziness, and couldn't stand up on her own, among other things.  [Pl., at 46, 52-57; TB at 13-16].

16. On May 16, 2017, Plaintiff (accompanied by her mother, Terri, and husband, John) visited a neurologist, Dr. Gurleen Sikand.  [Pl., at 55, 59-60].

17. Based on her clinical history, Dr. Sikand told Plaintiff that what happened on May 2nd was consistent with a seizure.  [Pl., at 60-61].  Dr. Sikand put her on Keppra, an anti-seizure medication, and warned her she is not to drive for a period of six months, among other things.  [Ex. 17, at pp. 1-3, 8, 13 (medical record excerpts from Dr. Sikand dated 5/16/17); Pl., at 61].

*Plaintiff Tells KTBS About Six Month Driving Restriction Per Her Doctor*

18. On May 19, 2017, Plaintiff told Mr. Bain that she was seeing a neurologist and undergoing further tests because her doctors believed she was experiencing seizures or something similar to a seizure. *Id.* Plaintiff told Mr. Bain that although medication should get her close to normal, Dr. Sikand thought what happened was consistent with a seizure and he said she should not to drive for six months. [Pl., at 63, 66-69; RB at 37, 42, 64].

19. Later that same day, Mr. Bain informed George Sirven of his call with Plaintiff and what she said. [RB at 37-39, 41; GS at 16-17, 31-32, 37; SM at 22-25, 30, 39; Sirven Aff. ¶ 17; Ex. 11].

*KTBS Considered Options*

20. Over the next several days, Mr. Sirven, Mr. Bain and others considered possible options. [Sirven Aff. ¶¶ 18-21, 23-24; GS at 17, 21-22; RB at 44]. Mr. Sirven also contacted counsel for additional advice in light of this newest information. [SM at 25; Sirven Aff. ¶ 18].

21. KTBS has never held open an MMJ position for that length of time if someone was not able to drive. [Sirven Aff. ¶ 23]. Indeed, KTBS previously fired an MMJ who was precluded from legally driving for non-disability related reasons (i.e., suspension of license). [GS at 30-31].

22. Such an extended leave would have required KTBS to reassign Plaintiff's reporting duties to others and Mr. Sirven concluded that would have caused an undue hardship. [Sirven Aff. ¶¶ 18, 21, 24]. Given that relatively small size of the workforce, Plaintiff's absence for such a long period most likely would have prevented KTBS from having adequate coverage for breaking news events. *Id.*

23. Based on advice from legal counsel, consideration was also given to other vacancies for which Plaintiff may otherwise be qualified. [Sirven Aff. ¶ 20; RB at 61-64; SM at 27-28]. At that time, however, KTBS did not have any equivalent or lesser positions which were vacant and which Plaintiff was able to perform the essential job duties with or without reasonable accommodations. [Pl. at 21-22; GS at 18].

24. Although Plaintiff had been trained to perform producer duties, KTBS still required field producers to go out in the field from time to time to cover news stories and thus that was not a viable option (even assuming arguendo a producer position was still vacant). [Sirven Aff. ¶ 20; McCallie Aff. ¶ 4; GS at 18; Pl., at 24-25].

25. KTBS had no reason to doubt what Plaintiff or her mother told KTBS about Plaintiff's condition or her job-related limitations. [GS at 20].

*No Reasonable Accommodations Were Available*

26. Given that driving was an essential function of her MMJ position and given the extended nature of her driving restriction as relayed by Tara herself, George Sirven made the decision to end her employment until such time as she could perform her essential duties with or without reasonable accommodations. [GS at 9, 17-18; Sirven Aff. ¶ 25].

27. On May 24, 2017, Mr. Bain contacted Plaintiff via phone and told her that based on the 6-month driving restriction per her doctor, she was going to be released from employment but he invited her to reapply when she was able to resume driving. [RB at 49-52; Pl., at 80-82; Ex. 12].

28. That same day, Sherri McCallie sent Plaintiff a letter reiterating what Mr. Bain told Plaintiff. [Pl., at 82-83; SM at 26; Sirven Aff. ¶ 26; Ex. 4].

29. Plaintiff admits she never told Mr. Bain, Ms. McCallie or anyone else at KTBS that they were mistaken about the length of the stated driving restriction nor did she indicate that she would be able to drive at some point in the near future. [Pl., at 80-87; SM at 37; Sirven Aff. ¶ 26].

30. Plaintiff admits she has no personal knowledge to admit or deny facts concerning any internal discussions that Randy Bain, George Sirven, and/or Sherri McCallie may have had concerning her job-related limitations or any accommodations they may have considered. [Pl., at 93-94]

.

KEAN MILLER LLP

By:   /s/ Brian R. Carnie
      Brian R. Carnie, #30868

333 Texas Street, Suite 450
Shreveport, LA 71101
Telephone (318) 562-2700
Telecopier (318) 562-2751
Email: brian.carnie@keanmiller.com

***ATTORNEYS FOR KTBS, LLC***