UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

TARA BRANDO SULLIVAN                          CIVIL ACTION NO. 5:19-CV-784

VERSUS                                                       JUDGE DONALD E. WALTER

KTBS, LLC                                                  MAGISTRATE JUDGE HORNSBY

**<u>DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS</u>**
**<u>MOTION FOR SUMMARY JUDGMENT</u>**

Brian R. Carnie
KEAN MILLER LLP
333 Texas Street, Suite 450
Shreveport, LA 71101
Telephone:  (318) 562-2700
Facsimile:   (318) 562-2751
Email: brian.carnie@keanmiller.com

***ATTORNEYS FOR DEFENDANT,***
***KTBS, LLC***

## <u>TABLE OF CONTENTS</u>

I.      **Factual Background**........................................................................................**3**

      *Background About KTBS* ...........................................................................**3**

      *Plaintiff's Job Duties and Training* ........................................................**3**

      *The May 2, 2017 Incident* ........................................................................**4**

      *Plaintiff Tells Bain She is Not Able to Drive Per Doctor* ...................**6**

      *KTBS Did Consider Possible Accommodations*................................**7**

II.     **Law and Analysis** ............................................................................................**9**

      A.   **Plaintiff Cannot Sustain a Claim of Disability Discrimination** .......**9**

            1.   **Driving was an Essential Function of the MMJ Position** ...................**10**

            2.   **No Reasonable Accommodation Would Have Enabled Plaintiff to Drive**........................................................................................**10**

            3.   **The Stated Length of Plaintiff's Restriction is Fatal to her Claim**......**12**

            4.   **No Vacant Positions Were Available for Which Plaintiff was Qualified**........................................................................................**15**

      B.   **Plaintiff Cannot Sustain a Failure-to-Accommodate Claim**...........................**16**

            1.   **No Independent Claim Where No Reasonable Accommodation Available** ......................................................................................**16**

            2.   **KTBS Made Good Faith Efforts to Learn of Her Limitations And Needs**................................................................................**16**

III.    **Conclusion** ........................................................................................................**18**

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Caldwell v. KHOU-TV,* 850 F.3d 237, 241 (5th Cir. 2017) .................................................. 9

*EEOC v. LHC Group, Inc.,* 773 F.3d 688, 697 (5th Cir. 2014) ......................... 9, 10, 11,13

*Epps v. City of Pine Lawn*, 353 F.3d 588, 593 fn. 5 (8th Cir. 2003) .................................. 14

*Golden v. Indianapolis Housing Agency*, 698 Fed. Appx. 835, 837 (7th Cir. 2017), *cert denied*, 138 S.Ct. 1446 (2018) ..................................................................................... 14

*Moss v. Harris Cty. Constable Precinct One*, 851 F.3d 413, 418 (5th Cir. 2017) ......................................................................................... 12, 13, 15

*Robert v. Board of Cty. Comm'rs of Brown Cty., KS,* 691 F.3d 1211, 1218 (10th Cir. 2012) ............................................................................................................... 14

*Severson v. Heartland Woodcraft, Inc.,* 872 F.3d 476, 481 (7th Cir. 2017), *cert denied*, 138 S.Ct. 1441 (2018) ..................................................................................... 13

*Silva v. City of Hidalgo, TX,* 575 Fed. Appx. 419 (5th Cir. 2014) ............................... 13, 16

*Williams v. Waste Management, Inc.,* 818 Fed. Appx. 315, 324-25 (5th 2020) ................. 9

### <u>Statutes and Regulations</u>

29 C.F.R. §1630.2 ...........................................................................................................10

29 CFR §1630.2(o) ......................................................................................................... 15

42 U.S.C. §12112(a) .........................................................................................................9

42 U.S.C. §12112(8) ........................................................................................................10

### <u>Regulatory Guidance</u>

U.S. EEOC Enforcement Guidance on Reasonable Accommodations Under ADA....................17

**<u>MAY IT PLEASE THE COURT:</u>**

This is a disability discrimination suit filed by Tara Brando Sullivan ("Plaintiff" or "Sullivan") against her former employer, KTBS, LLC.  Plaintiff worked for KTBS as a multimedia journalist ("MMJ") for five months until her employment ended after her doctor restricted her from driving for at least six months.  Plaintiff alleges that KTBS regarded her as disabled and that it terminated her due to the perceived disability notwithstanding the fact that Plaintiff herself told KTBS that she was going to be restricted from driving for at least six months.  Plaintiff also contends that KTBS failed to engage in the interactive process or obtain any independent assessment as to whether reasonable accommodations were available.

Plaintiff's claims are without merit.  KTBS fully complied with the ADA.  KTBS placed Plaintiff on a leave of absence immediately after it learned that she collapsed while covering the aftermath of tornados in the Canton, TX area.  KTBS gave Plaintiff time for Plaintiff and her doctors to figure out what caused her to collapse and to see when she would be able to return to work with or without restrictions.  However, on May 19, 2020, Plaintiff informed the KTBS 3 news director, Randy Bain, that her neurologist said she was restricted from driving for six months.  It cannot be reasonably disputed that driving was an essential function of the MMJ position as they are required on a daily basis to drive out to location to cover news stories and events and that KTBS's MMJ were usually a crew of one (i.e., the MMJ alone drives the KTBS news units to location, the MMJ alone is responsible for setting up the camera equipment and interviewing/filming people).  Once Plaintiff told KTBS she could not drive for at least

six months, the only way she could resume working as an MMJ prior to the expiration of the 6-month driving restricted period would be to have someone else drive her or eliminate driving as a job function, neither of which are reasonable under the ADA as a matter of law.   KTBS next considered whether there were any other vacant positions available for which Plaintiff was qualified and for which she could perform the essential functions of those jobs with or without reasonable accommodation but there were none. Because of the difficulties that would be imposed on KTBS and the other MMJs if they allowed her to remain on leave for at least six months, KTBS was left with no choice but to end her employment but invited her to seek re-employment with KTBS once she was released by her doctors to return to work and to resume driving.

Plaintiff cannot establish a prima facie case of disability discrimination because she was not a qualified individual.   For this same reason, Plaintiff cannot establish a failure-to-accommodate claim as there was no reasonable accommodation available that would have allowed Plaintiff to drive.   Contrary to her claims, KTBS made a good faith effort to discuss with Plaintiff and her family the limitations of her medical condition so they could determine what accommodations (if any) may be needed.   This is the essence of the interactive process.

For the reasons stated herein, KTBS requests that the Court grant its Motion for Summary Judgment and dismiss Plaintiff's lawsuit, in its entirety, with prejudice.

## I.      Factual Background

***Background About KTBS.***   KTBS operates a television station in Shreveport, Louisiana.  [Sirven Aff. ¶ 2].  KTBS is the local ABC affiliate ("Channel 3") that serves 28 counties and parishes in Northwest Louisiana, East Texas, western Oklahoma and southern Arkansas with a television marketing population over half a million people.  *Id.*  KTBS is locally owned and operated by the Edwin Wray family of Shreveport.  *Id.*; GS at 6.  KTBS is committed to equal employment opportunity and at all relevant times had formal "Equal Employment Opportunity" and non-discrimination/anti-harassment policies, and which stated that KTBS administers all personnel actions without regard to handicap or job-related disability, among other protected characteristics.  [SM at 7-8, 12-13; Sirven Aff. ¶ 5; McCallie Aff. ¶ 3].

***Plaintiff's Job Duties and Training.***   Plaintiff was hired by KTBS in January 2017 as a multimedia journalist ("MMJ").  [Pl., at 13, 16; RB at 16; SM at 15].  A MMJ's primary duty is to take a news story through the entire news media process up to and including presenting the story in a particular news media (on-air newscast or social media/internet).  [Pl., at 17-18; RB at 16-18; Sirven Aff. ¶¶ 6-8].  After selecting a story, they must investigate, conduct interviews, shoot video, write the content, and edit the content and video for the story.  *Id.*  This often requires the MMJ to travel throughout the KTBS viewing area and the MMJ often travels and works alone since the technology no longer requires a separate cameraperson (the MMJ simply sets up a small video camera on a tripod).  [Pl., at 34-35].  Driving is an essential function of the position.  Although there are occasions on which more than one employee may be assigned to cover a

3

particular story (particularly for significant breaking news events and outbreaks of severe weather), the fact remains that for most stories there is only one person to go out on location. *Id.*; RB at 66.

KTBS provided Plaintiff workspace at the station, a desktop computer, use of KTBS's laptops, a company-issued smartphone, audio/video equipment, use of a KTBS car, and access to its computer networks, so she could post stories and information from anywhere to any medium.   [Pl., at 84; Sirven Aff. ¶¶ 9-10].   Throughout her employment, KTBS provided coaching and training to Plaintiff, among others, about how to perform her duties, ways to improve, suggestions about her delivery, story content, graphics, video and photos. *Id.*  KTBS also cross-trained MMJs, including Plaintiff, to handle some producer duties, and likewise KTBS cross-trains field producers to handle MMJ duties in case the need arises and staffing is such that the station needs a producer to go out in the field to report on a story or an MMJ to help produce content for broadcast. [*Id.;* Pl., at 17-18, 22, 39-40; RB at 10-12, 18-20, 68-69].

***The May 2, 2017 Incident.***   On May 2, 2017, Plaintiff collapsed and lost consciousness while she and KTBS News Operations Manager Trey Lankford were covering the destruction and aftermath of the Canton, TX tornados.[1]  [Pl., at 37, 40].  Mr. Lankford reported the incident to Randy Bain (KTBS 3 news director).  [RB at 9, 22-25; Ex. 9].   Mr. Bain then separately contacted Plaintiff's husband, John Sullivan, and

---

[1] As explained above, for breaking news events and big stories, KTBS sometimes assigns more than one employee to report on a story.  [RB at 66].  That was the case for the Canton, TX tornados which caused widespread damage in east Texas.

Plaintiff's mother, Terri Brando.  [RB at 26; TB at 16-17; Pl., at 45; GS at 12; SM at 15-17; Ex. 9].

Plaintiff's does not remember much of what happened on May 2nd.  She remembers seeing the damage to a house, and the next thing she recalls is waking up in the hospital in Sulphur Springs, TX.  [Pl., at 40-45].  Plaintiff was discharged from the hospital on May 3rd and she was driven back to Shreveport so she could visit with her internist to figure out what caused her to lose consciousness.  [*Id.,* at 50-51].

During the following week, Plaintiff's mother, Terri, periodically provided updates to Mr. Bain about her daughter's condition via text messages.  [RB at 29-30; TB at 20-26; Exs. 7 and 8].  Based on the information from Terri Brando, as of May 10, it was KTBS's understanding that doctors were still trying to diagnose Tara's ailment and that she was restricted from getting up by herself and was limited in her movement and ability to speak.  *Id.*  Mr. Bain forwarded this information to KTBS station manager George Sirven and controller Sherri McCallie and asked what they should do from an HR standpoint.  [RB at 32-34; GS at 9-10, 12-13, 15-16; SM at 17-18; Sirven Aff. ¶ 13; Ex. 10].

Mr. Sirven reached out to undersigned counsel for legal advice to ensure compliance with the FMLA, ADA, and workers compensation, among other laws.  [GS at 7-9, 13; SM at 12, 18; Sirven Aff. ¶ 14].  After consulting with counsel, on May 11, 2017, KTBS sent Plaintiff a letter advising that she was being placed on unpaid medical leave pending further information about her anticipated return-to-work date with or

without restrictions (Plaintiff was not eligible for FMLA leave[2] as she had not yet worked a total of 12 months with KTBS).  [Pl., at 57-59; RB at 34-36; GS at 13-15; SM at 19-22; Sirven Aff. ¶¶ 15-16; Ex. 3].

Plaintiff visited with a series of doctors to try to figure out what was going on. [Pl., at 52-56, 59, 63].  She continued to experience severe headaches, vertigo/dizziness, and couldn't stand up on her own, among other things.  [Pl., at 46, 52-57; TB at 13-16[3]]. On May 16, Plaintiff (accompanied by her mother, Terri, and husband, John) visited a neurologist, Dr. Gurleen Sikand.  [Pl., at 55, 59-60].  Plaintiff told Dr. Sikand that she passed out several times during her childhood (high school years).  [Pl., at 74-75].  Dr. Sikand ultimately opined that based on her past clinical history and the May 2nd incident, Plaintiff most likely suffered a seizure.  [Pl., at 60-61].  Dr. Sikand put her on Keppra, an anti-seizure medication, and instructed her as follows:

> I warned her she is not to drive for a period of six months, operate heavy equipment, or swim by herself.  She understands that.

[Ex. 17, at pp. 1-3 (medical record excerpts from Dr. Sikand dated 5/16/17); Pl., at 61].

***Plaintiff Tells Bain She is Not Able to Drive Per Doctor.***  On May 19, 2017, Mr. Bain and Plaintiff spoke by telephone.  [Pl., at 64, 66-67].  Plaintiff told Mr. Bain that she was seeing a neurologist and undergoing further tests because her doctors believed she was experiencing seizures or something similar to a seizure. *Id.*  Plaintiff told Mr. Bain

---

[2] Plaintiff's counsel stipulates that Plaintiff was not eligible for FMLA leave.  [RB at 45].

[3] According to Plaintiff's mother, these symptoms continued for approximately two months after the May 2, 2017 incident.  [TB at 14-16].

that although medication should get her close to normal, Dr. Sikand thought what happened was consistent with a seizure and he said she should not to drive for six months.  [Pl., at 63, 66-69; RB at 37, 42, 64].  Plaintiff told Bain that she misses work and hoped that she could return at some point but she was not sure when.  [Pl., at 69].  Mr. Bain thanked Tara for the update and told her to focus on getting well.  [Pl., at 69-70; RB at 48-49].  Later that same day, Mr. Bain informed George Sirven of his call with Plaintiff and what she said.  [RB at 37-39, 41; GS at 16-17, 31-32, 37; SM at 22-25, 30, 39; Sirven Aff. ¶ 17; Ex. 11].

***KTBS Did Consider Possible Accommodations.***  Over the next several days, Mr. Sirven, Mr. Bain and others considered possible options.  [Sirven Aff. ¶¶ 18-21, 23-24; GS at 17, 21-22; RB at 44].  Mr. Sirven also contacted counsel for additional advice in light of this newest information.  [SM at 25; Sirven Aff. ¶ 18].  Plaintiff made clear during her May 19th telephone call with Randy Bain that per her doctor she was unable to drive for at least the next six months.  Indeed, Plaintiff admitted as much in her deposition testimony.  She admits she told Bain everything Dr. Sikand had conveyed to her, including the fact that he thought she had a seizure, that she was on anti-seizure meds and that he warned her not to drive for six months.  Mr. Bain did not come up with this 6-month driving restriction out of thin air based on any perceived disability.

Based on advice from legal counsel, consideration was also given to other vacancies for which Plaintiff may otherwise be qualified.  [Sirven Aff. ¶ 20 ;RB at 61-64; SM at 27-28].  At that time, however, KTBS did not have any equivalent or lesser positions which were vacant and which Plaintiff was able to perform the essential job

duties with or without reasonable accommodations.  [Pl. at 21-22; GS at 18].  Although Plaintiff had been trained to perform producer duties, KTBS still required field producers to go out in the field from time to time to cover news stories and thus that was not a viable option (even assuming arguendo a producer position was still vacant).  [Sirven Aff. ¶ 20; McCallie Aff. ¶ 4; GS at 18; Pl., at 24-25].  Eliminating the driving function of her MMJ position was not reasonable since that would cause significant hardship on KTBS and would limit the station's ability to cover news stories since they would be one MMJ short for at least six months.  [GS at 18; Sirven Aff. ¶¶ 18, 21, 24].  Multimedia journalists are not easily replaced, especially for temporary basis, as KTBS requires MMJs to have prior education and experience in broadcast journalism and KTBS often has to hire MMJs from outside the KTBS broadcast market to relocate to Shreveport since it is difficult to find local talent with the prerequisite experience and education. [*Id.;* Pl. at 11-12].  It is not like KTBS can go to a temporary staffing agency to find a news reporter to cover Plaintiff's job duties during any extended leave.  The MMJ job also required fairly extensive training.  *Id.*

Given that driving was an essential function of her MMJ position and given the extended nature of her driving restriction as relayed by Tara herself, George Sirven made the decision to end her employment until such time as she could be perform her essential duties with or without reasonable accommodations.  [GS at 9, 17-18; Sirven Aff. ¶ 25].

On May 24, 2017, Mr. Bain contacted Plaintiff via phone and told her that based on the 6-month driving restrictions per her doctor, she was going to be released from employment but he invited her to reapply when she was able to resume driving.  [RB at 49-52; Pl., at 80-82; Ex. 12].   That same day, Sherri McCallie sent Plaintiff a letter reiterating what Mr. Bain told Plaintiff.  [Pl., at 82-83; SM at 26; Sirven Aff. ¶ 26; Ex. 4]. Importantly, Plaintiff admits she never told Mr. Bain, Ms. McCallie or anyone else at KTBS that they were mistaken about the length of the stated driving restriction nor did she indicate that she would be able to drive at some point in the near future.  [Pl., at 80-87; SM at 37; Sirven Aff. ¶ 26].

## II.    LAW AND ANALYSIS

The summary judgment standard is well-settled in this circuit and will not be repeated here.

### A.    Plaintiff Cannot Sustain a Claim of Disability Discrimination

The Americans With Disabilities Act prohibits an employer from discriminating against a "qualified individual" on the basis of a disability.   42 U.S.C. § 12112(a). Without direct evidence of discrimination, establishing a prima facie case under the ADA requires Plaintiff to show that: (1) she has a disability, or was regarded as disabled; (2) she was qualified for the job; and (3) she was subject to an adverse employment decision on account of her actual or perceived disability.  *Caldwell v. KHOU-TV,* 850 F.3d 237, 241 (5th Cir. 2017); *EEOC v. LHC Group, Inc.,* 773 F.3d 688, 697 (5th Cir. 2014); *see also, Williams v. Waste Management, Inc.,* 818 Fed. Appx. 315, 324-25 (5th 2020). Plaintiff cannot establish element number 2.

9

Plaintiff must establish that she is "qualified" by showing that either (1) she could perform the essential functions of her job in spite of her disability, or (2) that a reasonable accommodation of her disability would have enabled her to perform the essential functions of the job.  *EEOC v. LHC Group,* 773 F.3d at 697; 42 U.S.C. § 12111(8). Here, it is undisputed that Plaintiff informed KTBS that her doctor said she could not drive for six months.

### 1.   Driving was an Essential Function of the MMJ Position

Driving is undoubtedly an essential function of the MMJ position.  Plaintiff admits that MMJs are required to go out in the field to report on stories, film and interview people.  She did this on a daily basis during the weekdays.  Plaintiff admits that she would drive the KTBS news unit by herself on most occasions and that most times the MMJ is not accompanied by anyone else.  Because Plaintiff said she was restricted from driving due to her doctor's concern that she may have suffered a seizure, she was no longer able to perform the primary function of her position.

### 2.  No Reasonable Accommodation Would Have Enabled Plaintiff to Drive

There was no reasonable accommodation that would have enabled Plaintiff to drive sooner than six months.  The ADA requires employers to make modification or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability to perform the essential functions of that position.  *Id.;* 29 C.F.R. § 1630.2. However, the ADA does not require an employer to relieve an employee of any essential

functions of her job, modify those duties, reassign existing employees to perform those jobs, or hire others to do so.  *EEOC v. LHC Group,* 773 F.3d at 698.

Plaintiff is unable to identify any reasonable accommodation that would have allowed <u>Plaintiff</u> to drive sooner than six months.  [Pl., at 91-95].  The above stated law is clear that KTBS was not required to eliminate the driving function of the MMJ position, or to reassign or hire other persons to drive Plaintiff.  That simply is not reasonable.  Public transportation was not the answer as that is limited as to the areas served within the Shreveport-Bossier area, and it does not serve areas outside the immediate metropolitan area (e.g., Plaintiff could not cover stories in East Texas or even in rural parts of Caddo Parish).  [Sirven Aff. ¶ 19].  Ride-sharing services such as Uber or Lyft were also similarly limited.  *Id.*  Having a family member or other third party chauffeur her around as needed is likewise not reasonable.  [Sirven Aff. ¶ 22].  First, any such person would have to be with Plaintiff at all times during the work day since she had to be ready to go out in the field at moment's notice to cover a news events in KTBS' broadcast market.  [*Id.;* GS at 19].  Moreover, such an arrangement would have posed significant legal liabilities on the station in the event that the third party driver had an accident or was injured while driving Plaintiff on KTBS business.  [GS at 19; SM at 28-29; Sirven Aff. ¶ 22].  KTBS's insurance would not cover such non-employees.  *Id.* Moreover, various federal and state labor laws likely would have required KTBS to pay the chauffeur(s) as an employee(s) if they were knowingly assisting/driving Plaintiff for KTBS business.

Plaintiff also suggested at her deposition that she could have ignored her doctor's warning and drove.[4]   [Pl. at 91].  Even if Plaintiff did in fact consider this, she did not communicate this to KTBS and moreover, even if she had, that is a non-starter because she would have posed a direct threat to the safety and health of Plaintiff and others based on her own doctor's advice, her admitted actual condition, and Dr. Sikand's concern that she could have another seizure.  This is unreasonable.

Plaintiff and her attorney also suggested in her complaint [Doc. # 1, ¶ 9] that she told Mr. Bain during the May 19 phone call that she was going to be released to return to work in a week in any capacity.  That is not true.  [RB at 59].  Indeed, Plaintiff admitted at deposition that she and her doctors never discussed any definitive return to work date on or before her May 19th call with Bain; in fact, she never had such a discussion with her doctors period.   [Pl, at 52-53, 68-69, 97, 110-112].

### 3.   The Stated Length of Plaintiff's Restriction is Fatal to her Claim

The real question is whether a long-term leave of absence (here, at least 6-months) is a reasonable accommodation within the meaning of the ADA.  Time off, whether paid or unpaid, can be a reasonable accommodation but an employer is not required to provide a disabled employee with indefinite leave.  *Moss v. Harris Cty. Constable Precinct One,* 851 F.3d 413, 418 (5th Cir. 2017).  Plaintiff's doctor's records indicate that he warned Plaintiff she could not drive for six months following the May 2nd incident.  Indeed, the

---

[4] This despite her admission that she continued to have "lots of spells" [Pl., at 73-74] and that according to her mom this went on for approximately two months [TB at 13-16].

records indicate that Plaintiff contacted her neurologist on May 23, 2017 to report she had another "spell" witnessed by her husband.  [Ex. 17, at p. 6; Pl., at 72-73].  Thus, as of her May 19 phone call with Mr. Bain, her inability to drive was in fact indefinite as there was uncertainty whether Plaintiff would in fact be able to resume driving exactly six months following the May 2nd incident.   However, even assuming arguendo the six-month restriction was definite, the length of that restriction still renders her not qualified to perform the MMJ position at the time of her termination.  *See, Moss,* 851 F.3d at 418.

As the Seventh Circuit recently instructed, a long-term leave of absence cannot be a reasonable accommodation under most circumstances.   *Severson v. Heartland Woodcraft, Inc.,* 872 F.3d 476, 481 (7th Cir. 2017), *cert denied*, 138 S.Ct. 1441 (2018)(affirming summary judgment in favor of employer where plaintiff told employer he would need two months additional leave after he exhausted his FMLA leave – court held that plaintiff was not a qualified individual).   "[N]ot working is not a means to perform the job's essential functions."   *Id.*  An extended leave of absence does not give a disabled individual the means to work; it excuses her not working.  While a short leave of absence may be reasonable in appropriate circumstances, a medical leave spanning multiple months does not permit the employee to perform the essential functions of her job.   *Id.; see also, EEOC v. LHC Group,* 773 F.3d at 698-99 (affirming summary judgment and dismissal of ADA discrimination claim with respect to the field nurse position on grounds that plaintiff was not a qualified individual - plaintiff suffered seizure and was thereafter restricted from driving, and driving was an essential function of that position); *Silva v. City of Hidalgo, TX,* 575 Fed. Appx. 419 (5th Cir. 2014)(holding that it

would be unreasonable for employer to have to wait at least one or two months beyond FMLA exhaustion for employee to return to work).

Six months leave is certainly beyond the realm of reasonableness under the facts of this case. *Golden v. Indianapolis Housing Agency*, 698 Fed. Appx. 835, 837 (7th Cir. 2017), *cert denied*, 138 S.Ct. 1446 (2018) (request for six months leave after FMLA removed plaintiff from the class of individuals protected under the ADA); *Robert v. Board of Cty. Comm'rs of Brown Cty., KS,* 691 F.3d 1211, 1218 (10th Cir. 2012)(a leave must assure the employer that the employee can perform the essential functions in the "near future" – suggesting but not deciding that six months leave is unreasonable); *Epps v. City of Pine Lawn,* 353 F.3d 588, 593 fn. 5 (8th Cir. 2003) (six months leave is not reasonable).

KTBS has never held open an MMJ position for that length of time if someone was not able to drive.[5]  [Sirven Aff. ¶ 23].  Such an extended leave would have required KTBS to reassign Plaintiff's reporting duties to others and that would have caused an undue hardship.   [Sirven Aff. ¶¶ 18, 21, 24].  Given that relatively small size of the workforce, Plaintiff's absence for such a long period most likely would have prevented KTBS from having adequate coverage for breaking news events.  *Id.*  While KTBS was prepared and in fact did place her on unpaid leave pending further information from Plaintiff and her doctors (leave which was more than what she was entitled under KTBS' policies), once it became clear she would be precluded from driving for a minimum of six

_____

[5] Indeed, KTBS previously fired an MMJ who was precluded from legally driving for non-disability related reasons (i.e., suspension of license).  [GS at 30-31].

14

months, the station could not reasonably accommodate such an extended leave of absence.  [Sirven Aff. ¶ 24].

### 4.  No Vacant Positions Were Available For Which Plaintiff Was Qualified

Reassignment to a different job may be a reasonable accommodation of last resort but the plaintiff bears the burden of proving that an available position exists (i.e., is vacant) and that she was qualified.  *Moss,* 851 F.3d at 418.  The ADA does not require an employer to bump an employee from a job in order to create a vacancy nor does it require an employer to create a new position.  29 CFR § 1630.2(o).  Here, Plaintiff is unaware of any equivalent or lower level position which was vacant at the time of her termination. Indeed, there were none other than arguably the news producer position, as that is something that KTBS and Mr. Sirven actually considered before deciding to end Plaintiff's employment.  [Sirven Aff. ¶ 20].  According to Plaintiff, the only available position which she believes may have been posted was an anchor position, but even if that were true (which it is not), that would have been a promotion and the ADA does not impose a duty on the employer to promote the employee to a higher level vacant position. KTBS did post for a producer position at the end of April 2017, but the station decided not to fill that position.  [McCallie Aff. ¶ 4].  Even assuming that position was still vacant on May 24th, that position likewise required that the producer to drive to locations in the field as needed.  [Sirven Aff. ¶ 20].  KTBS does not have dedicated producer positions who are not required from time to time to cover stories out in the field.  *Id.*

In short, Plaintiff's statements to Mr. Bain on May 19, 2017 about her anticipated driving restriction are fatal to her claims.  She was not a qualified individual.

**B.      Plaintiff Cannot Sustain a Failure-to-Accommodate Claim**

**1.  No Independent Claim Where No Reasonable Accommodation Available**

Plaintiff also claims that KTBS failed to engage in the interactive process with Plaintiff to determine if there were any reasonable accommodations available.  However, summary judgment on her failure to accommodate claim is warranted for the same reason summary judgment is warranted on her disability discrimination claims - - Plaintiff was not a qualified individual.  As the Fifth Circuit has instructed, the ADA's direction to the parties to engage in an interactive process is not an end in itself; it is a means to the end of forging reasonable accommodations.  *Silva v. City of Hidalgo, TX,* 575 Fed. Appx. at 424.  When an employer's alleged unwillingness to engage in a good faith interactive process leads to a failure to reasonably accommodate an employee, the employer violates the ADA.  *Id.*  However, any purported dereliction cannot be said to have led to a failure to reasonably accommodate where no reasonable accommodation was available as in the instant case for the reasons explained above.  *Id.*

**2.  KTBS Made Good Faith Efforts to Learn of Her Limitations and Needs**

Moreover, KTBS did engage in the interactive process with Plaintiff.  As soon as KTBS learned of the May 2nd incident, it placed Plaintiff on leave pending further information.  On May 11th, after learning more from Tara's family which indicated that she was going to have to remain off work for some unknown time period and that the doctors were still uncertain what caused her to collapse, KTBS sent her a letter to Plaintiff requesting periodic updates about her condition and told her that the station would continue to pay its portion of her group health insurance premiums (something that

it was not obligated to do so).  KTBS had multiple conversations with Plaintiff and her family.  At that time, KTBS did not know how much longer Plaintiff would need to be off work and it was willing to give her more time for Plaintiff and her doctors to determine this.  However, the May 19th phone call to Mr. Bain changed things.  Plaintiff told Bain that her doctors thought she might have had a seizure, that she was now taking anti-seizure medication, and that her doctor told her she was restricted from driving for six months.

There is no standardized formula concerning the ADA-mandated interactive process.  The interactive process is an informal process to clarify what the employee needs and to identify the appropriate reasonable accommodation.  The employer may ask the individual relevant questions that will enable it to make an informed decision about what is needed.

> The exact nature of the dialogue will vary.  In many instances, both the disability and the type of accommodation required will be obvious, and thus there may be little or no need to engage in any discussion.  In other situations, the employer may need to ask questions concerning the nature of the disability and the individual's functional limitations in order to identify an effective accommodation.

U.S. EEOC Enforcement Guidance on Reasonable Accommodation and Undue Hardship Under the ADA, Requesting Reasonable Accommodation FAQ #5, https://www.eeoc.gov/laws/guidance/enforcement-guidance-reasonable-accommodation-and-undue-hardship-under-ada (website visited 10/8/20).

Here, there was no reason to doubt what Plaintiff or her mother told KTBS about Plaintiff's condition or her job-related limitations.  [GS at 20].  This was not a case where

KTBS had reason to question whether she had a disability and/or the need for an accommodation.  The need was obvious, but it was also obvious that there was nothing that KTBS could do absent eliminating the driving requirement from her duties for at least the next six months, or have another employee drive Plaintiff around.  Neither of those were reasonable nor required under the ADA.  Plaintiff cannot dispute that KTBS and Mr. Sirven did consider whether there were other available equivalent or lower level positions for which she was qualified to perform the essential functions of those positions with or without reasonable accommodation but at that time there were none.

### III.   CONCLUSION

For the reasons stated herein, Defendant KTBS, LLC respectfully request that this Court grant its Motion for Summary Judgment and dismiss all of Plaintiff's claims, with prejudice.

Respectfully submitted,

KEAN MILLER LLP


By:   *s/Brian R. Carnie*
      Brian R. Carnie, T.A., La. Bar #30868

333 Texas Street, Suite 450
Shreveport, LA 71101
Telephone:  (318) 562-2700
Facsimile:  (318) 562-2751
Email:  brian.carnie@keanmiller.com

***ATTORNEYS FOR KTBS, LLC***