UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| TARA BRANDO SULLIVAN | CIVIL ACTION NO. 5:19-cv-0784 |
| VERSUS | JUDGE DONALD E. WALTER |
| KTBS, LLC | MAGISTRATE JUDGE HORNSBY |

## **DECLARATION OF GEORGE SIRVEN**

I, George Sirven, being duly sworn, depose and say as follows:

1. I am the Station Manager at KTBS, LLC ("KTBS"). I have served in that capacity since 1995.

2. KTBS operates a television station in Shreveport, Louisiana. KTBS is the local ABC affiliate ("Channel 3") that serves 28 counties and parishes in Northwest Louisiana, East Texas, southeastern Oklahoma and southern Arkansas with a television marketing population over half a million households. KTBS is locally owned and operated by the Edwin Wray family of Shreveport.

3. As station manager, I am responsible for the overall management of the station, including hiring, firing, human resources policies, budgeting, content and Federal Communications Commission (FCC) compliance.

4. I am the ultimate decisionmaker with respect to all hiring, firing and disciplinary decisions involving KTBS' reporters, anchors, multimedia journalists, and other on-air staff. I personally approved the hiring of Plaintiff, and I personally made the decision to end her employment.

5. KTBS is committed to equal employment opportunity and at all relevant times had formal "Equal Employment Opportunity" and non-discrimination/anti-harassment policies, including our EEO policy which provided that KTBS administers all personnel actions without regard to handicap or job-related disability, among other protected characteristics.

### *Description of Multimedia Journalists' Job Duties*

6. During the five months that Plaintiff worked for KTBS, she was a multimedia journalist, sometimes referred to as an MMJ. Randy Bain, the KTBS 3 news director, was Plaintiff's direct supervisor.

7. A MMJ's primary duty is to take a news story through the entire news media process up to and including presenting the story in a particular news media (on-air newscast or social media/internet). After selecting a story, they must investigate, conduct interviews, shoot

video, write the content, and edit the content and video for the story. This often requires the MMJ to travel throughout the KTBS viewing area and the MMJ often travels and works alone since the technology no longer requires a separate cameraperson (the MMJ simply sets up a small video camera on a tripod).

8. Driving is an essential function of the MMJ position. Although there are occasions on which more than one employee may be assigned to cover a particular story (particularly for significant breaking news events and outbreaks of severe weather), the fact remains that for most stories there is only one person to go out on location.

9. KTBS provided Plaintiff workspace at the station, a desktop computer, use of KTBS' laptops, a company-issued smartphone, audio/video equipment, use of a KTBS car (a news unit), and access to its computer networks, so she could post stories and information from anywhere to any medium.

10. Throughout her employment, KTBS provided coaching and training to Plaintiff, among others, about how to perform her duties, ways to improve, suggestions about her delivery, story content, graphics, video and photos. KTBS also cross trained MMJs, including Plaintiff, to handle some producer duties, and likewise KTBS cross trained field producers to handle MMJ duties in case the need arises and staffing is such that the station needs a producer to go out in the field to report on a story or an MMJ to help produce content for broadcast.

*The May 2, 2017 Incident and Subsequent Communications*

11. I first learned that Plaintiff had collapsed while covering s news story for KTBS on May 2, 2017, when I received an email (Exhibit 9) from Randy Bain informing me of this.

12. I asked Mr. Bain to keep me informed of Plaintiff's condition and instructed him to follow-up with Plaintiff and/or her family and to let me know any updates or changes.

13. On May 10, 2017, Mr. Bain sent me an email (Exhibit 10) updating me on Plaintiff's status and condition.

14. At that point, I contacted our legal counsel (Mr. Brian Carnie, a labor and employment attorney at Kean Miller LLP in Shreveport, LA) to seek legal advice to ensure compliance with the FMLA, ADA, and workers compensation, among other laws. I regularly consult with Kean Miller and Mr. Carnie on legal issues.

15. After consulting with Mr. Carnie, I decided to place Plaintiff on an unpaid leave of absence of unknown duration pending further information about her anticipated return-to-work date with or without restrictions (Plaintiff was not eligible for FMLA leave as she had not yet worked a total of 12 months with KTBS). At that time, we had no idea how long Plaintiff may need to be out or when she might be able to return to work in any capacity. Although KTBS does not have a medical leave of absence policy, and although Plaintiff did not have any available accrued vacation or sick time to use, I authorized this leave as an accommodation to Plaintiff.

16. Exhibit 3 is the letter which I reviewed and approved prior to Sherri McCallie sending to

2

Plaintiff.

17. The next update I received was on May 19, 2017, when Mr. Bain reported what had been communicated to him by Plaintiff. *See,* Email from Bain to me dated 5/19/17 (Exhibit 11). Mr. Bain told me that Plaintiff said she was restricted from driving for at least six months.

### *KTBS Did Consider Possible Accommodations Prior to Terminating Plaintiff*

18. I again contacted Mr. Carnie at Kean Miller for additional legal advice in light of this latest information. Based on my conversation with Mr. Carnie, it was my understanding that we were not required to eliminate the driving function from Plaintiff's MMJ position nor were we required to assign other people to drive Plaintiff to location in the field. Indeed, we did not have enough staff at that time to do so. This would have required us to take another employee from his or her regular job duties to chauffeur Plaintiff around as needed; such a person would have had to been on-call and ready to leave at moment's notice, thus limiting the other employee's ability to complete his/her work. We could not assign another MMJ to do the driving as the MMJs most often work as a crew of one and thus we would have been one MMJ short in the event of breaking news or to cover their regularly assigned stories for that day.

19. Public transportation was not an option as that is limited as to the areas served within the Shreveport-Bossier area, and it does not serve areas outside the immediate metropolitan area (e.g., Plaintiff could not cover stories in East Texas or even in rural parts of Caddo Parish). Ride-sharing services such as Uber or Lyft were also similarly limited in terms of their coverage area and this also would have required them to stay on location while Plaintiff gathered information, filmed and conducted interviews.

20. Based on my conversation with Mr. Carnie, I also reached out to Sherri McCallie and Randy Bain to see whether the station had other vacancies for which Plaintiff was qualified and which she could perform the essential functions of those jobs with or without reasonable accommodation. I was told there were none. We had recently posted a vacancy for a producer, but we still required producers to go out in the field from time to time to cover news stories and thus that was not a viable option. This is because there are times when a breaking news event happens and we don't have enough MMJs available to cover the story (or we need more than one person to cover large stories). KTBS cross trains the MMJs and producers with respect to their essential job duties for this reason. KTBS did not have dedicated producer positions who are not required from time to time to cover stories out in the field as part of their essential job duties.

21. Multimedia journalists are not easily replaced, especially for a temporary basis, as KTBS requires MMJs to have prior education and experience in broadcast journalism and KTBS often has to hire MMJs from outside the KTBS broadcast market to relocate to Shreveport since it is difficult to find local talent with the prerequisite experience and education. When an MMJ position becomes available, it often takes us many months to find a qualified replacement. This job also required fairly intensive training and it would not be economical for KTBS to provide training to an individual for only a temporary basis.

3

22. I was asked during my deposition in this case whether Plaintiff could have hired her own personal driver or chauffeur to take her to where she needed to go as needed. This would not have been reasonable. Any such person would have to be with Plaintiff at all times during the work day since she had to be ready to go out in the field at moment's notice to cover a news events in KTBS' broadcast market. Moreover, such an arrangement would have posed significant legal liabilities on the station in the event that the third party driver had an accident or was injured while driving Plaintiff on KTBS business. It is my understanding that KTBS's insurance would not cover such non-employees.

23. KTBS has never held open an MMJ position for the length of time that Plaintiff indicated she needed (i.e., six months) until she could resume driving. In 2016, I terminated an MMJ (Sara Machi) because she had her drivers license suspended for non-disability related reasons and thus she was not going to be able to legally drive for several months.

24. Such an extended leave would have required KTBS to reassign Plaintiff's reporting duties to others and that would have caused an undue hardship. Given that relatively small size of the workforce, Plaintiff's absence for such a long period most likely would have prevented KTBS from having adequate coverage for news and events. While KTBS was prepared and in fact did place her on unpaid leave pending further information from Plaintiff and her doctors (leave which was more than what she was entitled under KTBS' policies), once it became clear she would be precluded from driving for a minimum of six months, the station could not reasonably accommodate such an extended leave of absence.

25. Because reassignment to a vacant position was not an option, and because of the hardships that would be posed by allowed Plaintiff to remain out on leave for at least six months, I was left with no choice but to end Plaintiff's employment until such time as she could be perform her essential duties with or without reasonable accommodations.

26. I reviewed, approved, and instructed Sherri McCallie to send the letter marked in this case as Exhibit 4. This letter invited Plaintiff to reapply when she was able to resume work and driving. To my knowledge, Plaintiff never sought re-employment at KTBS, nor to my knowledge did she tell anyone that we were mistaken about the six- month driving restriction.

I certify under penalty of perjury that the foregoing is true and correct.

GEORGE SIRVEN

4