UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| TARA BRANDO SULLIVAN | : | CIVIL ACTION NO. 5:19-cv-0784 |
| VERSUS | : | JUDGE DONALD E. WALTER |
| KTBS, LLC | : | MAGISTRATE JUDGE HORNSBY |
| | : | JURY DEMAND |

**PLAINTIFF TARA BRANDO SULLIVAN'S
RESPONSE TO THE STATEMENT OF UNCONTESTED FACTS FILED BY KTBS
AND SUPPLEMENTAL STATEMENT OF CONTESTED FACTS**

NOW INTO COURT, comes plaintiff, TARA BRANDO SULLIVAN, who responds to the Statement of Uncontested Facts filed by KTBS, L.L.C. and Supplements the Statements of Contested Material Facts as follows:

Before addressing the statements of fact enumerated by KTBS, L.L.C. ("KTBS") in support of its motion for summary judgment, Plaintiff, Tara Brando Sullivan ("Sullivan and sometimes, "Ms. Sullivan") submits that of the numerous disputes of fact in this case, the most central is whether or not the ability to drive oneself was an essential function of Ms. Sullivan's job, or any job position that may have served as an accommodation. Following her responses to the Statement of Uncontested Facts filed by KTBS, Ms. Sullivan has submitted Supplemental Statements of Contested Material Facts I and II, supported by record evidence, demonstrating that driving oneself was not an essential function of Ms. Sullivan's job or of any job position to which she might have been assigned as an accommodation. Whenever Ms. Sullivan's responses to the statements of fact filed by KTBS reference her contention that driving was not an essential function of her job, she has incorporated into that response by reference, as if set forth in full, her Supplemental Statements of Contested Material Fact I and II.

1

**Statement of Uncontested Facts of KTBS, LLC**

1. This is a disability discrimination suit filed by Tara Brando Sullivan ("Plaintiff" or "Sullivan") against her former employer, KTBS, L.L.C. [Rec. Doc. 1].

   **SULLIVAN RESPONSE TO STATEMENT NO. 1:**

   **UNCONTESTED.**

2. Plaintiff alleges she was discriminated against because she was regarded as disabled; she also alleges that KTBS failed to engage in the interactive process or obtain independent assessment as to whether reasonable accommodations were available. [Rec. Doc. 1].

   **SULLIVAN RESPONSE TO STATEMENT NO. 2:**

   **CONTESTED AS WRITTEN: This is an oversimplification of Plaintiff's complaint [Rec. Doc. 1]. Plaintiff Sullivan alleges that she was discriminated against because of her disability, and the failure of KTBS to accommodate the same and/or participate in the interactive process and because KTBS regarded her as disabled.**

*Background*

3. KTBS operates a television station in Shreveport, Louisiana. [Sirven Aff. ¶2]. KTBS is the local ABC affiliate ("Channel 3") that serves 28 counties and parishes in Northwest Louisiana, East Texas, western Oklahoma and southern Arkansas with a television marketing population over half a million people. *Id.*

   **SULLIVAN RESPONSE TO STATEMENT NO. 3:**

   **UNCONTESTED.**

4. Plaintiff was hired by KTBS in January 2017 as a multimedia journalist ("MMJ"). [Pl., at 13, 16; RB at 16; SM at 15].[1]

   **SULLIVAN RESPONSE TO STATEMENT NO. 4:**

   **CONTESTED: Ms. Sullivan was hired by KTBS in January 2017, but her position title was Producer/Multi-Media Journalist ("Producer/MMJ"). When Ms. Sullivan was first hired, all she did was produce. [Rec. Doc. 16-6, Sullivan depo. p. 18, lines 1-4]. During the time she worked there, Ms. Sullivan performed the job duties of producer as well as the job duties of MMJ. [Rec. Doc. 16-6, Sullivan depo. p. 22, lines 9-16]. The News Director, Randy Bain,**

---

[1] "Pl." refers to Plaintiff's deposition taken on September 28, 2020; "GS" refers to George Sirven, "RB" refers to Randy Bain, "SM" refers to Sherri McCallie; TB refers to Terri Brando.

  referred to her as "Producer MMJ." [Rec. Doc. 16-16, email from News Director Randy Bain to George Sirven, Sherri McCallie and others on May 10, 2017, identifying Tara Sullivan in the subject line as "Producer MMJ Tara."] She held the title of Producer/MMJ because she was cross-trained as a producer and could perform the duties of each job position. [Rec. Doc. 16-9, Bain depo. p. 10, lines 8-24; p. 11, lines 14-25, pp. 12-13.] Though Tara Sullivan's job position title in the KTBS personnel office computer was "MMJ," this was merely a clerical entry, and the human resources director, Sherri McCallie had "no idea" the actual job duties Ms. Sullivan performed. [Rec. Doc. 16-10, McCallie depo. p. 17, lines 19-25; p. 18, line 1].

5. Plaintiff's employment with KTBS ended on May 24, 2017. [Pl. at 16].

  **SULLIVAN RESPONSE TO STATEMENT NO. 5:**

    **UNCONTESTED**

6. A MMJ's primary duty is to take a news story through the entire news media process up to and including presenting the story in a particular news media (on-air newscast or social media/internet). [Pl. at 17-18; RB at 16-18; Sirven Aff. ¶¶ 6-8]. After selecting a story, they must investigate, conduct interviews, shoot video, write the content, and edit the content and video for the story. *Id.* This requires the MMJ to travel throughout the KTBS viewing area and the MMJ often travels and works alone since the technology no longer requires a separate cameraperson (the MMJ simply sets up a small video camera on a tripod). [Pl. at 34-35].

  **SULLIVAN RESPONSE TO STATEMENT NO. 6:**

  **CONTESTED AS WRITTEN:** Plaintiff Sullivan's job position was that of Producer/MMJ (See Response to Statement 4 above). KTBS had no formal written job description for either position of Producer or MMJ. [Rec. Doc. 16-10, McCallie depo. p. 11; lines 21-23]. Plaintiff Sullivan also contests that the ability to drive herself (as opposed to travel) was an essential function of her job. Her job assignments were such that she could make appointments for interviews and filming. As to these tasks, Ms. Sullivan would "know what time you needed to be where to film, who you were going to talk to." [Rec. Doc. 16-6, Sullivan depo. p. 18, lines 21-25]. Contrary to the assertions of KTBS, Ms. Sullivan did not testify that "driving" was an essential function of the Producer/MMJ position. Her actual testimony was that when she went out to interview and film, she either drove <u>or rode</u> with a photographer. [Rec. Doc. 16-6, Sullivan depo. p. 35, lines 11-15]. During the time she worked for KTBS, when she functioned as a producer and not an MMJ, there was no travel at all. [Rec. Doc. 16-6, Sullivan depo. p. 23, lines 19-25] Further, she never saw any other producer travel for that job. [Rec. Doc. 16-6, Sullivan depo. p. 24, lines 1-6].

7.  KTBS also cross-trained MMJs, including Plaintiff, to handle some producer duties, and likewise KTBS cross-trains field producers to handle MMJ duties. [Pl., at 17-18, 22, 39-40; RB at 10-12, 18-20, 68-69; Sirven Aff. ¶¶ 9-10].

    **SULLIVAN RESPONSE TO STATEMENT NO. 7:**

    **CONTESTED, IN PART: Plaintiff Sullivan does not contest that KTBS cross-trained MMJ's. This fact is why her position was Producer/ MMJ and not just MMJ. Ms. Sullivan could fill either job position. See Plaintiff's Response to Statements 4 and 6, above.**

*The May 2, 2017 Incident and Plaintiff's Subsequent Limitations*

8.  On May 2, 2017, Plaintiff collapsed and lost consciousness while she and KTBS News Operations Manager Trey Lankford were covering the destruction and aftermath of the Canton, TX tornados. [Pl., at 37, 40].

    **SULLIVAN RESPONSE TO STATEMENT NO. 8:**

    **CONTESTED, in part: It is contested that Trey Lankford was the News Operations Manager. Ms. Sullivan described him as a very experienced news photographer. [Rec. Doc. 16-6, Sullivan depo p. 38, lines 11-20]. An additional fact, also material, is that Trey Lankford had driven Ms. Sullivan to the field location that day. [Rec. Doc. 16-9, Bain depo. p. 65, lines 20-25; p. 66, lines 1-4]. She had not been required to drive herself to the field location to cover that news story.**

9.  During the following week, Plaintiff and her mother, Terri Brando, periodically provided updates to KTBS news director Randy Bain about her daughter's condition via text messages. [RB at 29-30; TB at 20-26; Exs. 7 and 8].

    **SULLIVAN RESPONSE TO STATEMENT NO. 9:**

    **UNCONTESTED.**

10. Based on the information from Terri Brando, as of May 10, Mr. Bain was told that doctors were still trying to diagnose Tara's ailment and that she was restricted from getting up by herself and was limited in her movement and ability to speak. *Id.*

    **SULLIVAN RESPONSE TO STATEMENT NO. 10:**

    **UNCONTESTED.**

11. Mr. Bain forwarded this information to KTBS station manager George Sirven and controller Sherri McCallie. [RB at 32-34; GS at 9-10, 12-13, 15-16; SM at 17-18; Sirven Aff. ¶13; Ex. 10].

4

**SULLIVAN RESPONSE TO STATEMENT NO. 11:**

> **CONTESTED AS WRITTEN: Plaintiff Sullivan does not have personal knowledge to either contest or admit this proposed statement. However, Mr. Bain has conceded that his own interpretation of the information he received could have been error. [Rec. Doc. 16-9, Bain depo. p. 42, lines 24-25; p. 43, lines 1-11].**

12. Mr. Sirven reached out to undersigned counsel for legal advice to ensure compliance with the FMLA, ADA, and workers compensation, among other laws. [GS at 7-9, 13; SM at 12, 18; Sirven Aff. ¶14].

**SULLIVAN RESPONSE TO STATEMENT NO. 12:**

> **UNCONTESTED, BUT NOT RELEVANT: The opinion of the legal counsel of KTBS is just that, opinion. Here, it is not only irrelevant, but it is inadmissible and, accordingly, Ms. Sullivan requests that the Court strike the same. Further, any legal opinion obtained by KTBS does not make the decision to terminate Ms. Sullivan lawful under the ADA.**

*The Efforts of KTBS to Accommodate*

13. On May 11, 2017, KTBS sent Plaintiff a letter advising that she was being placed on unpaid medical leave pending further information about her anticipated return-to-work date with or without restrictions. [Pl., at 57-59; RB at 34-36; GS at 13-15; SM at 19-22; Sirven Aff. ¶¶15-16; Ex. 3].

**SULLIVAN RESPONSE TO STATEMENT NO. 13:**

> **CONTESTED AS WRITTEN: It is uncontested that KTBS sent Plaintiff Sullivan a letter dated May 11, 2017, and that the letter attached as Exhibit 3 is a true and correct copy of the letter she received. That letter, however, is the best evidence of its contents.**

14. Plaintiff was placed on an unpaid leave even though she was not eligible for FMLA leave as she had not yet worked a total of 12 months with KTBS. [RB at 45].

**SULLIVAN RESPONSE TO STATEMENT NO. 14:**

> **UNCONTESTED.**

15. Plaintiff visited with a series of doctors to try to figure out what was going on. [Pl., at 52-56, 59, 63]. She continued to experience severe headaches, vertigo/dizziness, and couldn't stand up on her own, among other things. [Pl., at 46, 52-57; TB at 13-16].

5

**SULLIVAN RESPONSE TO STATEMENT NO. 15:**

**UNCONTESTED**

16. On May 16, 2017, Plaintiff (accompanied by her mother, Terri, and husband, John) visited a neurologist, Dr. Gurleen Sikand. [Pl., at 55, 59-60].

**SULLIVAN RESPONSE TO STATEMENT NO. 16:**

**UNCONTESTED.**

17. Based on her clinical history, Dr. Sikand told Plaintiff that what happened on May 2nd was consistent with a seizure. [Pl., at 60-61]. Dr. Sikand put her on Keppra, an anti-seizure medication, and warned her she is not to drive for a period of six months, among other things. [Ex. 17, at pp. 1-3, 8, 13 (medical record excerpts from Dr. Sikand dated 5/16/17); Pl., at 61].

**SULLIVAN RESPONSE TO STATEMENT NO. 17:**

**CONTESTED: Ms. Sullivan objects to Statement Number 17 on grounds that the records of her physician, obtained after KTBS had already terminated her employment, are not relevant. The records of Dr. Sikland were obtained after Ms. Sullivan's lawsuit was filed. [Rec. Doc. 16-6, Sullivan depo. p. 59, line 25 – p. 60]. Ms. Sullivan requests that the Court strike the same from the record of this case.**

**These records are not relevant because they were not available to KTBS at the time it made its decision to terminate Ms. Sullivan's employment. In *Patrick v. Ridge*, 394 F.3d 311, 319-20 (5th Cir. 2004) the Fifth Circuit addressed this issue, stating that when "[t]he ultimate issue is the employer's reasoning *at the moment* the questioned employment decision is made, a justification that *could not* have motivated the employer's decision is not evidence that tends to illuminate this ultimate issue and is therefore simply irrelevant at this stage of the inquiry. Especially in the context of this case ---- the employer's summary judgment motion to dismiss ---- such an offering is tantamount to offering no reason at all."**

**At the time KTBS made the decision to terminate Ms. Sullivan's employment, Ms. Sullivan herself did not know whether or not truly had a seizure disorder or whether or not she would be restricted from driving or any period of time. [Rec. Doc. 16-6, Sullivan depo. p. 61]. Ms. Sullivan vehemently denies having told KTBS that she definitely would be restricted from driving. It was very uncertain. [ Id.] For purposes of this summary judgment motion, the relevant information is what the employer knew at the time it made its decision to terminate Ms. Sullivan's employment. It did not have a fitness for duty report**

6

**from Ms. Sullivan's physician. [Rec. Doc. 16-9, Bain depo, p. 51, l. 12-13; p. 60, l. 22-25]**

*Plaintiff Tells KTBS About Six Month Driving Restriction Per Her Doctor*

18. On May 19, 2017, Plaintiff told Mr. Bain that she was seeing a neurologist and undergoing further tests because her doctors believed she was experiencing seizures or something similar to a seizure. *Id.* Plaintiff told Mr. Bain that although medication should get her close to normal, Dr. Sikand thought what happened was consistent with a seizure and he said she should not to drive for six months. [Pl., at 63, 66-69; RB at 37, 42, 64].

   **SULLIVAN RESPONSE TO STATEMENT NO. 18:**

   **CONTESTED AS WRITTEN: Plaintiff Sullivan admits that she and Mr. Bain had a telephone conversation on May 19, 2017. Plaintiff Sullivan contests that she ever told Mr. Bain that she would be unable to drive for six months. Ms. Sullivan told Mr. Bain that she expected to be released to return to work within a week. See Plaintiff's Verified Complaint. [Rec. Doc. 1, ¶10]. While her return to work date was still dependent upon her doctor's release, Ms. Sullivan expected to return to work soon.**

   **KTBS has no evidence that Ms. Sullivan reported to KTBS that she did, in fact, have a seizure disorder and would be unable to drive for six months. What Ms. Sullivan actually told the News Director, Mr. Bain, was that she "might have had a seizure" and "may not be able" to drive for six months. [Rec. Doc. 16-6, Sullivan depo. p. 66, lines 15-24]. On May 19, 2020, Ms. Sullivan expected to be able to return to work within a week and told Mr. Bain of her intent to do so. [Rec. Doc. 1, ¶10]. Further, Plaintiff Sullivan contests that driving was an essential function of her job as a Producer/MMJ or that KTBS had any information upon which it could base its belief that a restriction on her driving, if any, would be extended.**

19. Later that same day, Mr. Bain informed George Sirven of his call with Plaintiff and what she said. [RB at 37-39, 41; GS at 16-17, 31-32, 37; SM at 22-25, 30, 39; Sirven Aff. ¶17; Ex. 11].

   **SULLIVAN RESPONSE TO STATEMENT NO. 19:**

   **CONTESTED, IN PART: It is uncontested that Mr. Bain sent communications to Mr. Sirven regarding his telephone conversation with Ms. Sullivan and his e-mails to Mr. Sirven and Ms. McCallie are the best evidence of Mr. Bains' communications.**

   **It is contested that Mr. Bain communicated accurate information. Ms. Sullivan vehemently asserts that she did not tell Mr. Bain that she had actually be diagnosed with a seizure disorder, that she had suffered a seizure, or that**

7

she would, in fact, be unable to drive for six months. She presented these as possibilities, not actualities. See Plaintiff's Response to Statement No. 18. Further, Mr. Bain conceded in his sworn deposition testimony that he may have been mistaken about what Plaintiff Sullivan told him in her May 19, 2017, telephone conversation. He never received that information from Ms. Sullivan's doctor. [Rec. Doc. 16-9, Bain depo. p. 42, lines 24-25; p. 43, lines 1-11]

*KTBS Considered Options*

20. Over the next several days, Mr. Sirven, Mr. Bain and others considered possible options. [Sirven Aff. ¶¶18-21, 23-24; GS at 17, 21-22; RB at 44]. Mr. Sirven also contacted counsel for additional advice in light of this newest information. [SM at 25; Sirven Aff. ¶18].

**SULLIVAN RESPONSE TO STATEMENT NO. 20:**

**CONTESTED:** The statement that Mr. Sirven, Mr. Bain and others considered possible options to termination of Ms. Sullivan's employment is demonstrably false. Specifically:

<u>Mr. Sirven did not consider possible options.</u> Mr. Sirven, who made the decision to terminate Ms. Sullivan's employment, testified that the six-month driving restriction was the "game changer" for him. [Rec. Doc. 16-8, Sirven depo. p. 17, lines 14-25.] Relying only on the information conveyed to him by Mr. Bain (who admits he could have erred) and without making any attempt to contact Ms. Sullivan or wait for her to provide the fitness for duty that KTBS had previously requested, Mr. Sirven made the decision to terminate Ms. Sullivan's employment. [Rec. Doc. 16-8, Sirven depo. p. 22, lines 13-20; pp. 15-18, line 2].

<u>Mr. Bain was the News Director, and he was not consulted.</u> Mr. Bain testified that he was not consulted about any possible accommodation for Ms. Sullivan. Plaintiff directs the Court to the following excerpt from Mr. Bain's deposition, Rec. Doc. 16-9, Bain depo, p. 47, lines 5–25; p. 48, lines 1-2:

**Page 47**
| | | |
|---|---|---|
| 5 | Q | Alright. Who informed you that the decision had |
| 6 | | been made to terminate her employment? |
| 7 | A | I don't remember. It was probably George, but I do |
| 8 | | not remember. |
| 9 | Q | Did you have any discussions with Mr. Sirven about |
| 10 | | any accommodations that could be made for Ms. |
| 11 | | Sullivan in order to allow her to continue her |
| 12 | | employment? |
| 13 | A | No. |
| 14 | Q | Did you have any discussions with Mr. Sirven |

8

| | | |
|---|---|---|
| 15 | | regarding the possibility of allowing Ms. Sullivan |
| 16 | | to be in a producer role as opposed to a full MMJ |
| 17 | | role? |
| 18 | A | No. |
| 19 | Q | Did you have any discussions with Mr. Sirven |
| 20 | | regarding the possibility of allowing Ms. Sullivan |
| 21 | | to resign rather than being terminated? |
| 22 | A | No. |
| 23 | Q | Other than being told that the decision had been |
| 24 | | made to let Ms. Sullivan go, did you have any |
| 25 | | discussions with Mr. Sirven about the termination |

Page 48
| | | |
|---|---|---|
| 1 | | of Tara Brando Sullivan's employment? |
| 2 | A | Not that I remember. |

**Ms. McCallie, who handled Human Resources Duties such as Job Announcements, had nothing to contribute.** When probed about the option to place Ms. Sullivan in a producer position, Ms. McCalllie tesitifed that she had no idea whether or not Ms. Sullivan had any experience as a producer. Asked how often a producer would be required to drive, Ms. McCallie answered, "I have no clue." She further testified that she was unaware of any consideration of whether or not an accommodation could be as to the alleged driving requirement. [Rec. Doc. 16-10, McCallie depo. p. 28, lines 14-20].

Ms. McCallie further testified that upon receiving the email from Mr. Bain in which Mr. Bain stated that Ms. Sullivan was unable to drive for six months, Mr. Sirven communicated his decision to terminate Ms. Sullivan's employment. There was no consideration of an accommodation for Ms. Sullivan. See [Rec. Doc. 16-10, McCallie depo. p. 22, lines 16-19]. "Once Randy sent us the email stating that she had told him that she would not be able to drive for at least six months, then we consulted our attorney again and we decided to do the letter."

**No one consulted Ms. Sullivan about possible options, and this is an uncontested fact.** KTBS could not possibly have given adequate consideration to any possible options for accommodating Ms. Sullivan without including her in that discussion. Mr. Sirven admits that there was no communication with Ms. Sullivan about any potential accommodation. [Rec. Doc. 16-8, Sirven depo. p. 22, lines 13-20].

**IT IS FURTHER CONTESTED** that driving was an essential function of her job as an "Producer/MMJ" or that KTBS had any information upon which it could base its belief that a restriction on her driving, if any, would be extended. Further, Plaintiff Sullivan contests that reasonable accommodations were not

**available. She was cross trained as a producer and KTBS had an open producer position. [See Sullivan's Response to Statements of Fact 4 and 23].**

21. KTBS has never held open an MMJ position for that length of time if someone was not able to drive. [Sirven Aff. ¶23]. Indeed, KTBS previously fired an MMJ who was precluded from legally driving for non-disability related reasons (i.e., suspension of license). [GS at 30-31].

    **SULLIVAN RESPONSE TO STATEMENT NO. 21:**

    **CONTESTED: Whether or not driving is an essential function of Ms. Sullivan's job, or of any job by which she might have been accommodated is a disputed fact. Further, the comparison KTBS seeks to make is not relevant. The MMJ that KTBS references in paragraph 23 of Mr. Sirven's statement was terminated for "non-disability related reasons." The facts KTBS presented reasonably imply that as to that employee's license suspension the termination was a disciplinary measure. The termination of the other MMJ does not establish that the ability to drive oneself is an essential function of the job of MMJ.**

    **Further, the person Mr. Sirven identifies as terminated for a suspended license was only an "MMJ." Mr. Sirven does not identify this employee as having been cross-trained or to have functioned as a Producer/MMJ. Ms. Sullivan was cross trained as a producer and had experience at KTBS fulfilling the role of producer. [See Sullivan Response to Statement No. 4] Producers rarely travel to field locations, and travel is a marginal duty of the producer's job. [See Sullivan Response to Statements 4, 23, and Sullivan's Supplemental Statements of Contested Material Facts I and II.**

22. Such an extended leave would have required KTBS to reassign Plaintiff's reporting duties to others and Mr. Sirven concluded that would have caused an undue hardship. [Sirven Aff. ¶¶18, 21, 24]. Given that relatively small size of the workforce, Plaintiff's absence for such a long period most likely would have prevented KTBS from having adequate coverage for breaking news events. *Id.*

    **SULLIVAN RESPONSE TO STATEMENT NO. 22:**

    **CONTESTED: Plaintiff Sullivan contests that driving was an essential function of her job as an "Producer/MMJ" or that KTBS had any information upon which it could base its belief that a restriction on her driving, if any, would be extended. Further, Plaintiff Sullivan contests that reasonable accommodations were not available. KTBS did not engage in the interactive process and has not provided any evidence that an accommodation would have been a hardship. No one consulted Ms. Sullivan about an accommodation. [Rec. Doc. 16-8, Sirven depo. P. 22, lines 13-20]. No one consulted the News Director, Mr. Bain, about a potential accommodation for Ms. Sullivan. See**

10

>**[Rec. Doc. 16-9, Bain depo. p. 47, lines 5–22; p. 48, line 12]. Any questions posed to Ms. McCallie about a producer's position were superficial, at best as she had "no clue" what travel was required of the producer position. [Rec. Doc. 16-10, McCallie depo. p. 28, lines 14-20.]**
>
>**Ms. Sullivan had not asked for a six-month leave. She told Mr. Bain she expected to return to work within one week of May 19, 2020 and she expected that she would be released from her doctor on that date or soon thereafter. [Rec. Doc. 1, ¶10].**

23. Based on advice from legal counsel, consideration was also given to other vacancies for which Plaintiff may otherwise be qualified. [Sirven Aff. ¶20; RB at 61-64; SM at 27-28]. At that time, however, KTBS did not have any equivalent or lesser positions which were vacant and which Plaintiff was able to perform the essential job duties with or without reasonable accommodations. [Pl. at 21-22; GS at 18].

    >**SULLIVAN RESPONSE TO STATEMENT NO. 23:**
    >
    >>**CONTESTED: The contention of KTBS that it gave any consideration to other vacancies for which Ms. Sullivan was qualified rings hollow, and a jury could find this to be false. See Sullivan's Response to Statement No. 20.**
    >>
    >>**The allegation that Ms. Sullivan was not qualified for her job position as cross-trained Producer/MMJ is contested. Driving is not an essential function of that job. Further, KTBS had an open position for a producer. See Rec. Doc. 16-5, McCallie Declaration ¶4; Rec. Doc. 16-5, McCallie Declaration (Def. Ex. 15)] Ms. Sullivan was cross-trained as a producer and had experience as a producer. See Sullivan Response to Statement 4. A comparison of the Vacancy Notices for the positions of Producer [Rec. Doc. 16-5, McCallie Declaration (Def. Ex. 15)] and Multi-Media Journalist [Rec. Doc. 16-5, McCallie Declaration (Def. Ex. 16)] show that the ability to drive oneself was not an essential function of either job.**
    >>
    >>**The job announcement for "News Producer," does not state that the applicant must be able to drive himself of herself, nor does it state that travel is a requirement of the job. The job announcement for Multi-Media Journalist states that the job responsibilities include "travel to scenes where news is happening." But does not state that this travel has to be by vehicle operated by the MMJ. When describing the duties of the News Producer job, News Director Bain stated the producer did not go out into the field except for special events. He gave examples of election specials, severe weather events, and Fourth of July festivities. More importantly, the Producer does not go to field locations alone, but works alongside the MMJ. [Rec. Doc. 16-9, Bain depo. p. 18, lines 10-25; p. 19 – p. 20, lines 1-4.] This suggests that the MMJ could, but was not required, to drive.**

11

> **Plaintiff Sullivan contests that driving was an essential function of her job as an "Producer/MMJ" or that KTBS had any information upon which it could base its belief that a restriction on her driving, if any, would be extended. Further, Plaintiff Sullivan contests that reasonable accommodations were not available.**
>
> **Mr. Sirven's opinion that public transportation could not be used to fulfill any travel requirements of the position of Producer/MMJ, or News Producer [Rec. Doc. 16-4, Sirven Declaration, ¶19] is pure speculation. He offers no evidence other than his mere opinion that Ms. Sullivan could not have obtained transportation to a field location when "from time to time" travel was required of a News Producer. Ms. Sullivan's experience as Producer/MMJ had been that most travel was by appointment. [Rec. Doc. 16-6, Sullivan depo p. 18, lines 21-25] It is a reasonable inference that with advance knowledge of the field location, Ms. Sullivan could have secured transportation or made other arrangements to obtain the interview of the field film. The "special events" that Mr. Bain described as examples of field production duties of producers indicate that these are events which are known in advance. Travel arrangements can be arranged.**

24. Although Plaintiff had been trained to perform producer duties, KTBS still required field producers to go out in the field from time to time to cover news stories and thus that was not a viable option (even assuming arguendo a producer position was still vacant). [Sirven Aff. ¶20; McCallie Aff. ¶4; GS at 18; Pl., at 24-25].

> **SULLIVAN RESPONSE TO STATEMENT NO. 24:**
>
> **CONTESTED: Plaintiff Sullivan contests that driving was an essential function of her job as an "Producer/MMJ" or that KTBS had any information upon which it could base its belief that a restriction on her driving, if any, would be extended. Further, Plaintiff Sullivan contests that reasonable accommodations were not available.**
>
> **See also, Ms. Sullivan's Response to Statement Number 23, above. The positions of producer and MMJ are different job positions, but producer/MMJ employees are cross trained to fulfill each position. Producers and MMJ's write and create content. "The producer role is more in the crafting and the stacking of the show . . . the formatting of the newscast." [Rec. Doc. 16-9, Bain depo. p. 10; pp. 16-17]**
>
> **While an MMJ is an "electronic news gatherer that would go out in the field." Field work is the exception, not the rule, for producers. The producer works in the station "through the day." The producer participates in the editorial meeting and, unlike an MMJ who is responsible for covering one story in the field, the producer covers the crafting and stacking of multiple stories, for purposes of making decisions**

12

> about which stories, local and national, will be included in the newscast. [Rec. Doc.16-9, Bain depo. pp. 16-17]
>
> Mr. Sirven states in his Sworn Declaration that Producers enter the field only "from time to time." [Rec. Doc. 16-4, Sirven Declaration, ¶20]. "From time to time" implies that field work is infrequent. Ms. Sullivan's own experiences as a producer at KTBS had not required her to drive at all. See Sullivan Response to Statement of Fact No. 4. Mr. Sirven does not state that the producer must drive himself or herself to the field location. KTBS News Director Bain conceded, even in large field coverage events, the producer could get there with someone else driving, stating, that when a producer does "field produce, they work alongside the MMJ's to cover whatever's going on." Because the producer would be working with an MMJ in the field, the MMJ could drive the vehicle. [Rec. Doc. 16-9, Bain depo. p. 20, lines 1-4]. In fact, at the time Ms. Sullivan had her medical emergency, she was being driven to a field location by another KTBS employee. [Rec. Doc. 16-9, Bain depo. p. 65, lines 20-25; p. 66, lines 1-4].
>
> In deposition News Director Bain described an example of an event in which multiple producers were engaged in field production of a large event. Asked how each of those producers got to the field location, Bain answered that he did not know. [Rec. Doc. 16-9, Bain depo. p. 18, lines 4-6] The fact that the News Director does not know how these producers all reached their field locations indicates that their ability to drive themselves was not essential to their work.

25. KTBS had no reason to doubt what Plaintiff or her mother told KTBS about Plaintiff's condition or her job-related limitations. [GS at 20].

    **SULLIVAN RESPONSE TO STATEMENT NO. 25:**

    > **CONTESTED:** This statement of fact is not relevant. KTBS had a duty to consult Ms. Sullivan and could have waited to receive a fitness for duty evaluation to determine if Ms. Sullivan would have any job-related limitations. It is conceded by KTBS that it did not wait to obtain her fitness for duty before terminating Ms. Sullivan's employment. [Rec. Doc. 16-9, Bain depo. at p. 51, lines 12-13; p. 60, lines 22-28.]

*No Reasonable Accommodations Were Available*

26. Given that driving was an essential function of her MMJ position and given the extended nature of her driving restriction as relayed by Tara herself, George Sirven made the decision to end her employment until such time as she could perform her essential duties with or without reasonable accommodations. [GS at 9, 17-18; Sirven Aff. ¶25].

13

**SULLIVAN RESPONSE TO STATEMENT NO. 26:**

**CONTESTED: Plaintiff Sullivan contests that driving was an essential function of her job as an "Producer/MMJ" or that KTBS had any information upon which it could base its belief that a restriction on her driving, if any, would be extended. Further, Plaintiff Sullivan contests that driving was an essential function of her job of "Producer/MMJ" and further contests that reasonable accommodations were not available.**

27. On May 24, 2017, Mr. Bain contacted Plaintiff via phone and told her that based on the 6-month driving restriction per her doctor, she was going to be released from employment but he invited her to reapply when she was able to resume driving. [RB at 49-52; Pl., at 80-82; Ex. 12].

**SULLIVAN RESPONSE TO STATEMENT NO. 27:**

**CONTESTED AS WRITTEN: It is uncontested that on May 24, 2017, Mr. Bain contacted Plaintiff Sullivan and told her that her employment was terminated. It is contested that Ms. Sullivan ever told Mr. Bain that her doctor had actually restricted her from driving for six months or that Mr. Bain or anyone at KTBS had any direct information, medical records or otherwise, from Ms. Sullivan's doctors. Further, Plaintiff Sullivan contests that driving was an essential function of her job of "Producer/MMJ" and that reasonable accommodations were not available. [See Plaintiff's Response to Statement of Facts, above, and Additional Contested Material Facts I and II.**

28. That same day, Sherri McCallie sent Plaintiff a letter reiterating what Mr. Bain told Plaintiff. [Pl., at 82-83; SM at 26; Sirven Aff. ¶26; Ex. 4].

**SULLIVAN RESPONSE TO STATEMENT NO. 28:**

**UNCONTESTED.**

29. Plaintiff admits she never told Mr. Bain, Ms. McCallie or anyone else at KTBS that they were mistaken about the length of the stated driving restriction nor did she indicate that she would be able to drive at some point in the near future. [Pl., at 80-87; SM at 37; Sirven Aff. ¶26].

**SULLIVAN RESPONSE TO STATEMENT NO. 29:**

**CONTESTED: Plaintiff Sullivan had told Mr. Bain that she expected to return to work within a week of May 19, 2020, and she expected that she would soon be released by her doctor. [Rec. Doc. 1, ¶10], She never told him any restrictions were certain. [Rec. Doc. 16-6, Sullivan depo. p. 61] She had a fitness for duty form that KTBS had provided (See Rec. Doc. 16-11) but she had no opportunity to complete before she was terminated. [Rec. Doc. 16-9,**

> **Bain depo. at p. 51, l. 12-13, p. 60, l. 22-25] She had been given written notice that she was on an unpaid leave at least until the end of May. Rec. Doc. 16.11 She could not correct the mistake because she was not aware of it. She had no opportunity to inform KTBS that they were mistaken about the belief regarding her driving restriction because KTBS did not contact her to discuss potential accommodations. [Rec. Doc. 16-8, Sirven depo. p. 22, lines 13-20]. KTBS did not engage in any interactive process, and, upon being notified that her employment was terminated, KTBS provided Plaintiff Sullivan with no appeal process. Further, Plaintiff Sullivan contests that driving was an essential function of her job of "Producer/MMJ" and that reasonable accommodations were not available.**

30. Plaintiff admits she has no personal knowledge to admit or deny facts concerning any internal discussions that Randy Bain, George Sirven, and/or Sherri McCallie may have had concerning her job-related limitations or any accommodations they may have considered. [Pl., at 93-94]
 **SULLIVAN RESPONSE TO STATEMENT NO. 30:**

> **UNCONTESTED, but not relevant: In deposition both Mr. Bain and Ms. McCallie testified that they were not consulted concerning the essential functions of Ms. Sullivan's job and any accommodations that might be made for her to return to work. Ms. McCallie testified that upon receiving the email from Mr. Bain in which Mr. Bain stated that Ms. Sullivan was unable to drive for six months, Mr. Sirven communicated his decision to terminate Ms. Sullivan's employment. See Rec. Doc. 16-10, McCallie depo. p. 22, lines 16-19, "Once Randy sent us the email stating that she had told him that she would not be able to drive for at least six months, then we consulted our attorney again and we decided to do the letter."**

> **Mr. Bain testified that he was not consulted about any possible accommodation for Ms. Sullivan. Rec. Doc. 16-9, Bain depo. p. 47, lines 5 – 22; p. 48, line 12]**

### *PLAINTIFF'S SUPPLEMENTAL STATEMENT MATERIAL FACTS*

**I.    There is a material dispute of fact regarding whether or not Plaintiff's job duties required her to drive herself is an essential function of her job.**

   A.   Her job title in the KTBS personnel office as Multi-Media Journalist, but she was cross trained to work as a Producer and the News Director described her job as Producer MMJ and performed duties of each job position.

   B.   The News Director, Randy Bain, referred to her as "Producer MMJ." [Rec. Doc. 16-16, email from News Director Randy Bain to George Sirven, Sherri McCallie and others on May 10, 2017, identifying Tara Sullivan in the subject line as

15

"Producer MMJ Tara."] She held this title because MMJ's were cross trained as producers and performed duties of each job position. [Rec. Doc. 16-9, excerpts from Randy Bain Deposition at deposition pp. 10, lines 8-24; 11, lines 14-25, pp. 12. Any entry of Ms. Sullivan's job position title in the KTBS personnel office computer as "MMJ" only was merely a clerical entry, and the human resources director, Sherri McCallie had "no idea" the actual job duties Ms. Sullivan performed. [Rec. Doc. 16-10, McCallie depo. p. 17, lines 19-25, p. 18, line 1].

C. The job announcement for the job opening for Multi-media Journalist states that the MMJ must "travel" to location. It does not state that the MMJ must drive himself or herself to location.

D. Station Manager George Sirven testified in his Sworn Declaration that the MMJ "travels." He did not testify that the MMJ must drive himself or herself.

E. Though it may have been customary for the MMJ to drive himself or herself to a field location, News Director Randy Bain testified that he "had never even thought about" why the MMJ would have to drive himself or herself as opposed to getting a ride. [Rec. Doc. 16-9, Bain depo. p. 18, lines 1-6].

F. When Ms. Sullivan first became ill at work on May 2, 2017, she was not driving. She was being driven to the field location by another employee of KTBS.

G. KTBS has not provided any evidence of the frequency with which a Producer/MMJ must drive himself or herself to a field location.

H. Ms. Sullivan's experience as a Producer/MMJ had been that most field work was done by appointment. [Rec. Doc. 16-6, Sullivan depo. p. 18, lines 21-25] This fact indicates there was enough advance notice of travel that Ms. Sullivan could find transportation either with an MMJ, or by some other means.

II. **There is a material dispute of fact regarding whether or not KTBS could have accommodated Ms. Sullivan by assigning her to the open producer position for the period of time in which her ability to drive was uncertain.**

A. Ms. Sullivan told Mr. Bain she expected to be able to return to work within a return to week of May 19, 2020, she expected to be released by her doctor soon. [Rec. Doc. 1, ¶10]

B. KTBS had a New Producer position open. [Rec. Doc. 16-4, Sirven Declaration, ¶20, "We had recently posted a vacancy for a producer . . . ."].

C. Ms. Sullivan was experienced as a news producer. When Ms. Sullivan was first hired, all she did was produce. [Rec. Doc. 16-6, Sullivan depo. p. 18, lines 1-4]. See also Sullivan Response to Statement No. 4.

16

D. During the time she worked at KTBS, Ms. Sullivan performed the job duties of producer as well as the job duties of MMJ. [Rec. Doc. 16-6, Sullivan depo. p. 22, lines 9-16]. See Sullivan response to Statement No. 4, also Bain depo. Rec. Doc. 16-9, Bain depo. p. 18, lines 10-25 stating Ms. Sullivan had producer duties already.

E. During the time she worked for KTBS, when she functioned as a producer and not an MMJ, there was no travel at all. [Rec. Doc. 16-6, Sullivan depo. p. 23, lines 19-25] Further, she never saw any other producer travel for that job. [Rec. Doc. 16-6, Sullivan depo. p. 24, lines 1-6]. The job notice for the open News Producer position did not state that any travel was required. [Rec. Doc. 16-5, McCallie Declaration, Def. Ex. 15]. Mr. Sirven testified in his Declaration that the News Producer must "travel" from "time to time." Rec. Doc. 16-4, Sirven Declaration, ¶20]. He did not state that the News Producer had to drive himself or herself.

F. "Travel" from "time to time" is indicative of a marginal job function, not an essential job function.

G. News Director Randy Bain testified that producers went to field locations only for special events, which he described as election specials, severe weather events, and the Fourth of July festivities. [Rec. Doc. 16-9, Bain depo. p. 18, lines 10-25 through p. 20, lines 1-4]. These are events that are known about in advance and for which travel can be planned.

H. News Director Bain testified that when a producer did engage in field production, the producer was accompanied by an MMJ. [Rec. Doc. 16-9, Bain depo. p. 20, lines 1-4]. From this fact a jury could infer that the MMJ could drive the producer to the field location.

I. KTBS did not provide any evidence that the ability to drive oneself to a field location was an essential function of the job of producer. Ms. McCallie testified that she had "no clue" how often a producer might have to travel. [Rec. Doc. 16-10, McCallie depo. p. 28, lines 14-20.

        Respectfully submitted,

        DOWNER, JONES, MARINO & WILHITE
        401 Market Street, Suite 1250
        Shreveport, LA 71101
        Tel: 318-213-4444
        Fax: 318-213-4445

        Allison A. Jones, T.A.
        La. Bar No. 16990

        By: */s/ Allison A. Jones*
        Attorneys for Tara Brando Sullivan

## **CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that a copy of the above and foregoing has been served upon the following party via e-mail and/or by United States Mail, postage prepaid and properly addressed thereto:

>Brian Carnie
>Kean Miller
>333 Texas Street, Suite 450
>Shreveport, LA   71101

    Shreveport, Louisiana, this _____ day of November, 2020.

                                                      _____
                                                             OF COUNSEL